**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Elie K. Mamboleo, | No. CV-14-00648-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Wells Fargo Bank NA, et al., | |
| Defendants. | |

Pending before the Court are defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Doc. 11); defendant Chex Systems, Inc.'s Motion to Dismiss (Doc. 12); and *pro se* plaintiff Mamboleo's Motion to Amend (Doc. 33). Defendants are moving for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth herein, the Court grants Defendants' motions to dismiss and denies Plaintiff's motion to amend.

**I. Background[1]**

In this removed action, Plaintiff broadly alleges that in December 2013, Vantage Credit Union "denied [him] personal, business and other opportunities." Co. (Doc. 1-1)

---

[1]    This recitation is based upon the factual allegations in the Complaint, which the Court "must accept as true" for purposes of these dismissal motions. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 589 (9th Cir. 2014) (citation omitted). Likewise, in considering these factual allegations, the Court must draw all reasonable inferences in favor of" Plaintiff as the nonmoving party. *See id.* The same is not true of legal conclusions though. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

at 26.[2]  This claimed denial was "based solely on the plaintiff's credit report from and/or provided by ChexSystems." (*Id.*)  That credit report, in turn, was based upon information Wells Fargo provided to Chex Systems.  (*Id.*)  Also in December 2013, Plaintiff contacted both defendants regarding that credit report.  (*Id*. at 27).  Responding to Plaintiff's inquiries, and again in December 2013, Wells Fargo provided him with unidentified "supporting documents showing" that Plaintiff was a payee upon death of "a charged off [bank] account" there.  (*Id.*)

In January 2014, Wells Fargo "informed" Plaintiff that it had "no record showing that [he] owns or owned an account with" it.  Co. (Doc. 1-1) at 27.  Around that same time, Wells Fargo corrected the inaccurate notation, providing Plaintiff with "a notification . . . advising the authorization to delete all reporting on the referenced account[.]"  (*Id.*)  Also in January 2014, Chex Systems "informed" Plaintiff that it had "deleted its actions against [him] from the ChexSystems credit reporting systems[.]"  (*Id.* at 28).  On February 4, 2014, Plaintiff and Chex Systems had a telephone conversation as to the information in its files.  Following up on that conversation, in a letter dated February 5, 2014, from Chex Systems to Plaintiff (which the Complaint impliedly mentions),[3] Chex Systems informed Plaintiff that it had previously deleted from its files

---

[2]     For uniformity and ease of reference, all citations to page numbers of docketed items are to the page assigned by the Court's case management and electronic case filing (CM/ECF) system.

[3]     It is well settled that, "a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting th[at] motion . . . into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (internal quotation marks and citation omitted).  The incorporation by reference doctrine allows a court to also "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks and citations omitted). Taking a relatively expansive view of that doctrine, the Ninth Circuit has recognized that "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). Under those circumstances, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks and citation omitted).  Based upon the foregoing, the Court is considering the February 5, 2014 letter and enclosed report, as

the information Wells Fargo submitted.  *See* Doc. 9 at 6; *see also* Co. (Doc. 1-1) at 28. Along with that letter, Chex Systems provided Plaintiff with an updated report, offering further assistance as necessary.  (*See id.* at 6-9).

Even though Wells Fargo promptly corrected the inaccurate information in its files, and even though that information was promptly removed by Chex Systems, Plaintiff was not satisfied.  Therefore, on February 27, 2014, Plaintiff filed an action in the Superior Court of Arizona in Maricopa County against Wells Fargo and Chex Systems, seeking over $2 million dollars, including approximately $1 million dollars in punitive damages.  Co. (Doc. 1-1) at 32.

Plaintiff's Complaint is not the model of clarity.[4]  The Complaint does mention, "the Fair Debt Collection Practices" Act ("FDCPA"), and the "Credit Reporting Act[][,]" that is, the Fair Credit Reporting Act ("FCRA").  Co. (Doc. 1-1) at 29 and 30.  Plaintiff does not specifically allege any violations under either of those Acts.  Instead, as to Wells Fargo, Plaintiff vaguely alleges that it engaged in "unfair debt collections, purportedly in violation of the FDCPA and the FCRA.  (*Id.* at 29).  With respect to Chex Systems, Plaintiff alleges that it engaged in unspecified "malicious debt collection practices[,]" also purportedly in violation of both of those Acts.  (*Id.* at 30).

Federal causes of action aside, Plaintiff prefaces his Complaint with the generic assertion that he is bringing "tort and other claims against [D]efendants[.]"  Co. (Doc. 1-

---

Chex Systems requests.

[4]   In fact, among the reasons Wells Fargo is seeking dismissal of the Complaint is Plaintiff's failure to comply with Fed.R.Civ.P. 10(b).  In pertinent part, that Rule that claims be asserted in "numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed.R.Civ.P. 10(b).  Plaintiff's *pro se* status does not excuse his non-compliance with this or any of the Rules of Federal Civil Procedure. reviewed for abuse of discretion.  *See King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cnty.,* 693 F.3d 896, 925 (9th Cir. 2012) ("Pro se litigants must follow the same rules of procedure that govern other litigants.")  Nor does it excuse his non-compliance with the LRCiv.  Nonetheless, the Court will not dismiss the Complaint based solely on this procedural shortcoming.  *See Draper v.* Coombs, 792 F.2d 915, 924 (9th Cir. 1986) (citations omitted) (treating *pro se* plaintiff "with great leniency" when "evaluating his compliance with the technical rules of civil procedure[]").  Not only that, but Wells Fargo's comprehensive motion to dismiss belies its assertion of "confusion" as to the nature of and bases for Plaintiff's claims.  *See* Mot. (Doc. 11) at 16:12.

1) at 26.  Even more troubling than Plaintiff's failure to number the paragraphs in his Complaint is his scattershot approach to pleading.  Rather than identifying specific state law based claims or alleged statutory violations, Plaintiff simply cites to a variety of Arizona statutes and two Arizona cases.  From what Defendants and the Court were able to discern, Plaintiff is attempting to allege roughly 12 state law based causes of action, which will be discussed more fully herein.

## II.  Motions to Dismiss[5]

### A.  Rule 12(b)(6) Legal Standards

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  A complaint must contain a "short and plain statement showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a)(2). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).  Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" however.  *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009)).  A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.   Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

A complaint need not contain detailed factual allegations to avoid a Rule 12(b)(6) dismissal, but it must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678  (citing *Twombly*,

---

[5]   Plaintiff requests oral argument.  The Court denies the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted).

These essential *Iqbal/Twombly* pleading requirements, including "'judicial experience and common sense[,]'" will guide the Court's analysis "to determine whether the factual allegations, which are assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679), *Petition for Certiorari Filed* (Feb. 10, 2015) (NO. 14-969).

### B.  Analysis

### 1.  FCRA & FDCPA

Defendants argue that Plaintiff has not stated a FCRA claim against them, thus mandating dismissal under Rule 12(b)(6).  Further, Defendants identically argue that Plaintiff's FDCPA claim fails because Plaintiff did not allege, nor can he, that either of them is a debt collector within the meaning of that Act.  Defendants similarly argue that Plaintiff's FDCPA claim fails because neither of them attempted to collect a debt as the Act defines that term.  Additionally, Wells Fargo argues that Plaintiff's allegations in the Complaint actually establish, as a matter of law, that it did not violate the FCRA.

Significantly, in responding to Defendants' motions, Plaintiff declares that he "asserts no claim [n]or intends to assert[] [any] federal claim in his Complaint[.]"  Resp. (Doc. 34) at 5:6-7.  This declaration is consistent with Plaintiff's declaration earlier in this litigation that "no action of claim in [his] Complaint has been brought under the 'FDCPA[,]' 15 U.S.C. §  1681 *et* [*s*]*eq.*, and the 'FCRA[,]' 15 U.S.C. §  1692 *et* [s]*eq.*"  Mot. (Doc. 31) at 2:3-5.  What is more, as defendants are quick to point out, Plaintiff did not address any of their substantive reasons for dismissal, such as Plaintiff's lack of standing to bring a FCRA claim against Wells Fargo, or Chex System's argument that the

FCRA does not impose strict liability for reporting inaccurate information. Because Plaintiff has failed to state a state a claim under either the FDCPA or the FCRA pursuant to Fed.R.Civ.P. 12(b)(6), and because he did not address Defendants' substantive arguments pertaining to such claims, the Court dismisses the FDCPA and FCRA claims with prejudice as against both defendants. *See King v. State of Ariz.*, 2010 WL 3219139, at *3 (D.Ariz. Aug. 13, 2010) (dismissing claims where plaintiff failed to state a claim pursuant to Rule 12(b)(6) and failed adequately to address Defendant's arguments).

### 2. State Law Claims

With respect to Plaintiff's myriad of state law claims, Wells Fargo, as a furnisher of information to consumer reporting agencies such as Chex Systems, argues that § § 1681h(e) and 1681t(b)(1)(F) of the FRCA preempt "all" such claims against it. Mot. (Doc. 11) at 9:4. Chex Systems argues for preemption based solely upon 15 U.S.C. § 1681h(e), the narrower of the two FCRA preemption provisions. Chex Systems contends that that section preempts the "majority" of Plaintiff's state law claims against it, *i.e.*, his claims for "defamation, invasion of privacy, negligence, and fraud or identity theft[.]" Mot. (Doc. 12) at 8:16; Reply (Doc. 39) at 1-2. Alternatively, even if the FCRA does not preempt Plaintiff's state law claims, Defendants argue that they fail as a matter of law.

In response, Plaintiff is taking the position that because he is not pursuing his FCRA or FDCPA claims, there is no federal preemption. *See Resp.* (Doc. 34) at 2:9-15. Plaintiff is mistaken. Even in the absence of a federal claim, courts have held that that Act preempts a plaintiff's separate state law claims. *See*, *e.g.*, *Buraye v. Equifax*, 625 F.Supp.2d 894 (C.D.Cal. 2008) (dismissing common law negligence and defamation claims as preempted under FCRA, although plaintiff did not allege any independent FCRA and FDCPA claims). Thus, despite Plaintiff's assertion to the contrary, he cannot avoid FCRA preemption by abandoning his FCRA and FCDPA claims.

### a. FCRA Preemption

### i. 15 U.S.C. § 1681h(e)

Section 1681h(e), enacted 26 years prior to 15 U.S.C. § 1681t(b)(1)(F), provides:

> [N]o consumer may bring any action or proceeding *in the nature of defamation, invasion of privacy, or negligence* with respect to the reporting of information *against any consumer reporting agency, . . . , or any person who furnishes information to a consumer reporting agency*, . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis added). "[T]his provision only preempts state claims for defamation, invasion of privacy and negligence and only to the extent such claims are based on the disclosure of certain types of information and are not based on malice or willful intent to injure." *Buraye*, 625 F.Supp.2d at 897-898 (internal quotation marks and citation omitted). The FCRA does not define malice. In *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), however, the Ninth Circuit adopted "the standard enunciated in *New York Times v. Sullivan*, 376 U.S. 254, 279–80, . . . (1964), requiring the publication be made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* at 1168 (quoting *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 471 (5th Cir. 2006)) (other citation omitted). "Under *New York Times*, to show 'reckless disregard,' a plaintiff must put forth 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 . . . (1968)) (other citation omitted).

In the present case, it is possible to construe the Complaint as alleging defamation, invasion of privacy and negligence claims against Chex Systems. *See* Co. (Doc. 1-1) at 30 – 31. It is also possible to construe the Complaint as alleging defamation and invasion of privacy claims against Wells Fargo. (*See id.* at 28-29). Plaintiff's Complaint is completely void of any factual allegations that either Defendant acted with the requisite degree of malice or willful intent so as to support a finding of malice under *Gorman*. Plaintiff's conclusory allegation that his "rights of duties were maliciously infringed upon[,]" made in the context of what appears to be a contract based claim for breach of the duty of good faith and fair dealing, does not suffice. *See* Co. (Doc. 1-1) at 31. Moreover, as to Wells Fargo, Plaintiff alleges that after being contacted by him, this

Defendant corrected the error.   Therefore, to the extent that 15 U.S.C. § 1618h(e) can be read as creating a limited exception to total FCRA preemption discussed next, *see Loomis v. U.S. Bank Home Mortgage*, 912 F.Supp.2d 848 (D.Ariz. 2012),   Plaintiff cannot avail himself of that exception. Accordingly, regardless to which Defendant they are directed, section 1618h(e) preempts Plaintiff's defamation, negligence and invasion of privacy claims.  Hence, dismissal of these claims is proper.

### ii.  15 U.S.C. § 1681t(b)(1)(F)

The second considerably broader FCRA preemption provision, upon which only Wells Fargo is relying, is 15 U.S.C. § 1681t(b)(1)(F).  Enacted in 1996, and expanding FCRA preemption as it pertains to furnishers, that statute reads in relevant part as follows:   "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]"   15 U.S.C. § 1681t(b)(1)(F).  This section contains two exceptions for Massachusetts and California laws not at issue here.

The Ninth Circuit, in *Gorman,* 584 F.3d 1147, described the seeming tension between 15 U.S.C. § 1681h(e) and 15 U.S.C. §  1681t(b)(1)(F) in this way.   Section "1681t(b)(1)(F) appears to preempt all state law claims based on a creditor's responsibilities under § 1681s–2," whereas "§ 1681h(e) suggests that defamation claims can proceed against creditors as long as the plaintiff alleges falsity and malice." *Id.* at 1166.  The *Gorman* Court recognized that the FCRA "preemption question present[ed] a difficult issue of first impression." *Id.* at 1165.   Further, the Court accurately observed that "[a]ttempting to reconcile the two sections ha[d] left district courts in disarray." *Id.* at 1166.  Although the *Gorman* Court "la[id] out, . . . , possible bases for reconciling the two provisions," in the end, it did not choose among them, opting instead to resolve plaintiff's state law libel claims on the merits.  *See Johnson v. Wells Fargo Home Mortgage*, 635 F.3d 401, 421 n. 17 (9th Cir. 2011).   "Absent further direction from the Court of Appeals on the issue, the 'majority [of district courts have] favored the 'total

preemption' approach, determining that § 1681t(b)(1)(F) totally preempts all 'state statutory and common law causes of actions which fall within the conduct proscribed under § 1681s–2.'" *Keshishian v. AFNI Inc.*, 2012 WL 5378819, at \*4 (C.D.Cal. Nov. 1, 2012) (quoting *Buraye* [*v. Equifax*,] 625 F.Supp.2d [894][,]  899 [(C.D.Cal. 2008) (citing a number of district courts cases that have reached this conclusion)); *see also Warring v. Green Tree Servicing LLC*, 2014 WL 2605425, at \*4 (D.Ariz. June 11, 2014) (granting Defendant's motion to dismiss a declaratory relief claim regarding the reporting of inaccurate information to credit reporting agencies based upon *Keshishian* and the majority view of total FCRA preemption).

Adopting the total preemption approach, in *Davis v. Maryland Bank*, 2002 WL 32713429 (N.D.Cal. June 29, 2002), the Court reasoned:

> The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action.

Davis, 2002 WL 32713429 at \*13 (quoting *Jaramillo v. Experian Information Solutions, Inc.*, 155 F.Supp.2d 356, 362 (E.D.Pa. 2001)).    The Davis Court further soundly reasoned:

> Indeed, the legislative history demonstrates that Congress enacted section 1681t(b)(1)(F) in order to create a uniform scheme governing the disclosure of credit information. . . . Allowing common law tort claims which implicate the same subject matter as section 1681s–2(1) would undermine Congress' intention to create a uniform system of protection for consumers.

*Id.* (citation omitted).  Based upon the persuasive reasoning in *Davis* and its progeny, this Court, too, will follow the majority total preemption approach.  When it does, the Court finds that section 1681t(b)(1)(F) preempts all of Plaintiff's remaining state law claims causes of action against Wells Fargo.  Those claims are preempted because each of them derives from Wells Fargo's obligations as a furnisher under 15 U.S.C. § 1681s-2 to report

accurate credit information and to correct erroneous reports.  Wells Fargo is thus entitled to dismissal of these claims as well.

### b.  Merits

Chex Systems, as a consumer reporting agency, cannot avail itself of FCRA's expansive preemption found in section 1681t(b)(1)(F).  Therefore, because the Complaint includes non-preempted state law claims against Chex Systems, it argues for dismissal on the basis of failure to state a claim under Fed.R.Civ.P. 12(b)(6).

Before addressing that argument, given its dismissal of the federal claims (the basis for removal), the Court must decide whether to exercise supplemental jurisdiction.  *See* 28 U.S.C. §  1367(c)(3) (A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]")  "The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (internal quotation marks and citation omitted).  Ordinarily, where "'all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Id.* (quoting *Carnegie-Mellon Univ. V. Cohill*, 484 U.S. 343, 351 (1988)).  "However, dismissal of the remaining state law claims is not 'mandatory.'"  *Id.* (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7).

Given the extremely close relationship between the federal claims and the state law claims in this case (that is, they all arise from the same set of operative facts), and because this is a removed action, the Court finds that in the interests of judicial economy, convenience, comity and fairness to the parties, it will exercise its discretion to retain jurisdiction over the few remaining non-preempted state law claims against Chex Systems.  *See* 28 U.S.C. §  1367(a) ("[I]n any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.")

### i. Intentional Interference with a Business Relationship

Chex Systems generously reads the Complaint as perhaps alleging that it intentionally interfered with Plaintiff's business relationship with Vantage. *See* Co. (Doc. 1-1) at 31. "The essential elements" of such a "claim are: (1) a valid business relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional and improper interference inducing or causing a termination of the relationship, (4) resultant damage to the party whose relationship has been terminated." *Agilysys, Inc. v. Vipond*, 2006 WL 2620103, at \*2 (D.Ariz. Sept. 13, 2006) (citing, *inter alia*, *Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bur. of Maricopa County, Inc.*, 637 P.2d 733, 740 (Ariz.1981)). "An alleged interferor is thus liable only for the damage caused by or resulting from his improper interference." *Id.* (citing cases). Absent from the Complaint are any factual allegations whatsoever to support such a claim. Therefore, this claim cannot survive Chex System's motion to dismiss.

### ii.  A.R.S. §  13-2008

Citing to A.R.S. §  13-2008, Plaintiff is alleging that Chex Systems engaged in identity theft. *See*  Co. (Doc. 1-1) at 31. However, that statute criminalizes identity theft, making it a class 4 felony. A.R.S. §  13-2008(E). There is no indication in that statute that the legislature intended to create a private cause of action for civil liability. *See generally Maguire v. Coltrell*, 2015 WL 470204, at \*3 (D.Ariz. Feb. 4, 2015) (quoting *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 877 P.2d 1345, 1350 (Ariz.App.1994) ("Under Arizona law, 'no private cause of action should be inferred based on a criminal statute where there is no indication whatsoever that the legislature intended to protect any special group by creating a private cause of action by a member of that group.'") Therefore, Plaintiff has not, and cannot, state a claim for civil liability against Chex Systems under A.R.S. § 13-2008.

### iii. A.R.S. § 44-101

In the same paragraph mentioning identity theft, Plaintiff 13-2008 cites to A.R.S. § 44-101 as an asserted basis for liability against Chex Systems. Co. (Doc. 1-1) at 31. Section 44-101 is Arizona's statute of frauds. Plaintiff misconceives the nature of that statute, which requires that in certain enumerated instances, none of which apply here, "[n]o action shall be brought in any court . . . unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized[.]" A.R.S. § 44–101. Accordingly, Plaintiff also fails to state a claim under this particular Arizona statute.

### iv. A.R.S. § 13-303

The final state law based cause of action Plaintiff alleges against Chex System is under A.R.S. § 13-303. This statute imposes criminal as opposed to civil liability conduct of another[.]" A.R.S. § 13-302. And, as with A.R.S. § 13-2008, there is no indication in this statute that the legislature intended to create a private cause of action for civil liability thereunder. Consequently, Plaintiff fails to state a claim under this statute as well.[6]

### v. Breach of the Duty of Good Faith and Fair Dealing

Once again, Chex Systems generously reads Plaintiff's Complaint -- this time to construe it as alleging a claim for breach of the duty of good faith and fair dealing. Even if the Complaint properly alleges the other elements of such a claim, one critical element is missing.

"'Arizona law implies a covenant of good faith and fair dealing in every contract.'" *Barten v. State Farm Mut. Auto. Ins. Co.*, 28 F.Supp.3d 978, 999 (D.Ariz. 2014) (quoting *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 (2002). "The duty arises by operation of law but

---

[6]     In his response, Plaintiff cites to several other Arizona statutes, but he cannot use his response to a motion to dismiss as a means of amending his complaint.

exists by virtue of a contractual relationship." *Wells Fargo*, 201 Ariz. at 490 (citation omitted).   Here, the Complaint does not include any allegations of a contractual relationship between Plaintiff and Chex Systems.  Hence, no duty of good faith and fair dealing arose between the two.  Consequently, as with each of Plaintiff's other non-preempted state law claims against Chex System, this one fails as a matter of law.

In sum, the Court grants Defendants' motions to dismiss Plaintiff's FDCPA and FCRA claims.   The Court also grants Defendants' motions to dismiss Plaintiff's defamation, negligence and invasion of privacy claims as preempted by FCRA. Alternatively, to the extent that 15 U.S.C. § 1618h(e) can be read as creating a limited exception to FCRA preemption for the just mentioned claims, Plaintiff cannot avail himself of that exception given the absence of any allegations of malice of willful intent in the Complaint.  As to all of the remaining state law based claims against Wells Fargo, the Court dismisses these claims as preempted under 15 U.S.C. § 1681t(b)(1)(F).  Lastly, the Court finds that the remaining non-preempted claims against Chex Systems must be dismissed for failure to state a claim, as discussed herein.

## III.   Motion to Amend

Simultaneously with the filing of his response to Defendants' motions, Plaintiff sought amendment of his complaint to "possibly add[] another Defendant 'Early Warning Services' as Wells Fargo Bank, N.A.['s] business partner in this case[.]"  Mot. (Doc. 33) at 1:25-27 (citation omitted).   The asserted justification for adding Early Warning Services is not apparent on the face of Plaintiff's Motion.  In any event, at that time, Plaintiff did not, as LRCiv 15.1(a) requires, lodge a proposed amended complaint.

In opposing amendment, Defendants accurately noted Plaintiff's non-compliance with LRCiv 15.1(a).  Indeed, that is Wells Fargo's first reason for opposing amendment. Wells Fargo further argues against amendment on the grounds that it would be futile and Plaintiff cannot amend his Complaint to divest this Court of jurisdiction.  Chex Systems expressly joins in Wells Fargo's opposition to amendment. *See* Joinder (Doc. 41) at 1:15-18.

After Defendants alerted Plaintiff of his failure to comply with LRCiv 15.1(a), he attempted to do so by lodging a proposed amended complaint (Doc. 42). That lodged Complaint does not comport with LRCiv 15.1(a), however, in that it does "not indicate in what respect it differs from the pleading which it amend, by bracketing or striking through the text to be deleted and underling the text to be added." *See* LRCiv 15.1(a).

Just as it overlooked Plaintiff's failure to comply with Fed.R.Civ.P. 10(b), the Court is willing to overlook his failure to comply with LRCiv 15.1(a). What the Court cannot overlook, however, is that amendment would be futile as Wells Fargo soundly reasons. More specifically, although it appears from his Motion, but *not* from the proposed amended complaint itself, that Plaintiff is seeking to amend his Complaint to omit his FCRPA and FCRA claims, such an amendment would do nothing to cure his deficient state law claims. As previously explained, Plaintiff's state law claims are either preempted under the FCRA or they are legally deficient. Moreover, with respect to Wells Fargo in particular, because the FCRA preempts all of Plaintiff's state law claims against it, even in the absence of federal claims, his state law claims would fail as against this defendant. Having found that any amendment here would be futile, there is no need to address Defendants' argument that Plaintiff is impermissible seeking to amend his Complaint in an effort to divest this Court of subject matter jurisdiction over his state law claims.

**IV. Attorneys' Fees and Costs**

Wells Fargo alone is seeking its of costs and attorneys' fees, which the Court declines to award.

**V. Conclusion**

Accordingly, for the reasons set forth herein,

**IT IS HEREBY ORDERED GRANTING** with prejudice defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Doc. 11);

**IT IS FURTHER ORDERED GRANTING** with prejudice defendant Chex Systems, Inc.'s Motion to Dismiss (Doc. 12);

**IT IS FURTHER ORDERED DENYING** with prejudice plaintiff Elie K. Mamboleo's Motion to Amend (Doc. 33);

**IT IS FINALLY ORDERED** that the Clerk of the Court shall kindly enter judgment in accordance with this Order and terminate this action.

**Dated** this 25th day of February, 2015.

Honorable Diane J. Humetewa
United States District Judge